LAW OFFICES OF
# JEFFREY LICHTMAN
11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
PAUL TOWNSEND

PH: (212) 581-1001
FX: (212) 581-4999

February 26, 2019

**BY ECF & FEDERAL EXPRESS**
Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    <u>United States v. Donald Cosman</u>, 16 CR 578 (S.D.N.Y.) (KMK)

Dear Judge Karas:

### A.    INTRODUCTION

    This letter is submitted on behalf of defendant Donald Cosman in anticipation of his March 12, 2019 sentencing. With this letter, the defendant respectfully requests that the Court impose a non-custodial sentence, which is consistent with the recommendation of the Department of Probation and the sentence received by fellow cooperating witness Andrew Lowery. Additionally, this sentence is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

    As this letter and the attachments will reveal, Mr. Cosman is a remarkably uncommon defendant. *First*, before his arrest in this case, Mr. Cosman met with federal investigators and was the first of the charged corrections officers to provide truthful information about the assault on inmate Kevin Moore. Immediately thereafter – and without a cooperation agreement in place – Mr. Cosman agreed to make tape recorded telephone calls of Carson Morris, who had lied to the government about the events surrounding the assault and encouraged Mr. Cosman to do the same. Instead, Mr. Cosman told the government the truth and captured Morris on tape discussing his plan to dupe investigators. *Second*, as the government's forthcoming §5K1.1 letter will no doubt reveal – and as previewed in the Presentence Investigation Report (PSR), Mr. Cosman's cooperation was extensive, significant, and his testimony was "extremely valuable." PSR at p. 21. *Third*, in the nearly three years since Mr. Cosman initially proffered with the government and admitted his own guilt, he has remained on bail without incident, found employment outside

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 2

of the Department of Corrections – presently he installs kitchens and bathrooms for Affordable Granite and Carpentry – and has continued his efforts to better his community through his role as a volunteer firefighter for the town of Marlboro, New York. *Finally*, Mr. Cosman has lived a life full of extraordinarily good and charitable deeds and the prospects for his rehabilitation are very good.

Based on this unique combination of factors, amplified below, we submit that Mr. Cosman is deserving of a non-custodial sentence.

### B. THE DEFENDANT'S GUILTY PLEA AND RESULTING GUIDELINES RANGE

On August 31, 2016, Mr. Cosman pled guilty pursuant to a cooperation agreement to Counts One through Four of a four count Information, which charged him with conspiracy to deprive rights, in violation of 18 U.S.C. § 241 (Count One); deprivation of rights under color of law, in violation of 18 U.S.C. § 242 (Count Two); conspiracy to falsify records, in violation of 18 U.S.C. § 371 (Count Three); and falsification of records, in violation of 18 U.S.C. § 1519 (Count Four). See August 22, 2016 Cooperation Agreement ("Cooperation Agreement") at pp. 1-2. Mr. Cosman faces no statutory minimum and a combined maximum of 45 years' imprisonment. Id. at p. 2.

As recounted in the PSR, Counts One and Two are grouped together pursuant to §3D1.2(a), and Counts Three and Four are grouped with Counts One and Two pursuant to §3D1.2(c). PSR at ¶ 43. Violations of 18 U.S.C. §§ 241 and 242 are covered by §2H1.1, which directs that the base offense level be set by the guideline for the underlying offense, here, aggravated assault. Id. at ¶ 44. Pursuant to U.S.S.G. § 2A2.2, the base offense level for assault is 14, and because the offense resulted in serious bodily injury, five levels are added, resulting in a base offense level of 19. See U.S.S.G. § 2A2.2(b)(3)(b). Further, as the offense was committed under the color of law, six levels are added (§2H1.1(b)(1)(B); PSR at ¶ 45) and because the victim was physically restrained, an additional two levels are added. U.S.S.G. § 3A1.3; PSR at ¶ 46. Finally, because the offense involved the falsification of records in order to cover up the offense, two levels are added for obstruction of justice. PSR at ¶ 48. With three levels subtracted for acceptance of responsibility (§3E1.1) the total offense level is 26, carrying an advisory sentencing range in the Criminal History Category I of 63 to 78 months imprisonment. PSR at ¶¶ 51-53, 94.

### C. MR. COSMAN'S PROMPT COOPERATION WITH AUTHORITIES

There can be no doubt that the assault on Kevin Moore, an inmate at New York's Downstate Correctional Facility, was a terrible incident made worse by its subsequent cover up

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 3

by the correctional officers at fault. As noted in the PSR, however, in March 2016 before he was charged in this case, Mr. Cosman was interviewed by federal investigators and became the first corrections officer to "provide honest information to the government about his own misconduct and that of fellow officers." PSR at p. 20. At this initial meeting, Mr. Cosman admitted to his role in the assault and his creation of a false incident report that put the victim as the initial aggressor as well as the fact that he "allow[ed] [a codefendant] to hit him on the back with a baton," to substantiate their false allegations that he was attacked. Id. at p. 21. Mr. Cosman made it his intent to cooperate with officials at that time and did not deviate.

While Mr. Cosman's forthcoming §5K1.1 letter from the government will surely provide greater detail, the PSR establishes much of what it is likely to contain, including information bearing on the following factors:

- Mr. Cosman's assistance was timely. See U.S.S.G. § 5K1.1(a)(5); PSR at p. 20. As noted above, the defendant met with the government and truthfully proffered before he was charged in this case.

- Mr. Cosman was consistently truthful and his information was reliable. See U.S.S.G. § 5K1.1(a)(2). "Cosman disclosed that prior to [his initial] meeting with investigators and prosecutors, [co-defendant] Morris asked [him] to provide the government with the same false account of the incident that Morris had articulated when he met with the government in late January 2016." PSR at p. 21. Instead of imparting this "false account," during his first debriefing, Cosman told the truth, exposing Morris' lie. Id.; see also September 13, 2018 Sentencing of Carson Morris, attached as Exhibit 1, at pp. 45-46 (Government: "Cosman told us during his first proffer that ... Morris had met with him and encouraged him to lie .... and Donald Cosman declined to do that. He came in and admitted ... his role in the incident and explained what ... the others did").

- Mr. Cosman's assistance was significant and useful. See U.S.S.G. § 5K1.1(a)(1). After exposing Morris' fabricated account to the government – and prior to signing a cooperation agreement – Mr. Cosman "agreed to participate in two recorded telephone conversations with Morris," and during one, Morris admitted that he provided a false version of events to the government. PSR at p. 21. The PSR also credits Mr. Cosman's detailed accounts of the incident as "extremely valuable and an important factor in the ultimate decision to charge the officers." Id.

- Mr. Cosman's assistance was extensive. See U.S.S.G. § 5K1.1(a)(3). In addition to making the two recorded telephone calls to Morris noted above, he participated in four proffer sessions with the government where he "truthfully and exhaustively" described the assault and cover-up. PSR at p. 21. Mr. Cosman also met with "prosecutors and

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 4

>   investigators on a number of occasions to prepare for his ... testimony." Id. At trial, Mr. Cosman was "an important witness," and he "independently helped prove the guilt of Scott and Santiago." Id. Cosman was therefore "valuable in proving [the government's] case." Id.

Finally, while we are not in possession of any specific threats made towards Mr. Cosman or his family, the possibility of such on account of his cooperation still remains as he testified against a superior officer at the Downstate Correctional Facility in a trial that was well publicized. U.S.S.G. § 5K1.1(a)(1); e.g., Ex-New York correction officers sentenced to prison over 2013 beating, Reuters, July 23, 2018; available at: https://www.reuters/.com/article/us-new-york-crime-fishkill/ex-new-york-correction-officers-sentenced-to-prison-over-2013-beating-idUSKBN1KD2M2 (last viewed February 19, 2019).

### D. THE DEFENDANT'S BACKGROUND AND THE NATURE OF THE OFFENSE – APPLICATION OF § 3553(a) FACTORS

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18 U.S.C. §3553(a)(1)-(2) (emphasis supplied). In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1).

#### i. The Sentence Received by Co-Defendant Andrew Lowery

On July 25, 2018, the Hon. Nelson Román sentenced codefendant Andrew Lowery to three years of supervised release, sparing him a period of incarceration. Mr. Lowery, also a cooperating witness for the government, had pleaded guilty to the same four counts as Mr. Cosman, and likewise testified at the trial of Kathy Scott and George Santiago, which resulted in their convictions and sentences of 100 months and 87 months, respectively. While Lowery was less culpable according to the government, as noted above, it was Mr. Cosman who first truthfully provided an account of the assault to federal investigators, and it was Mr. Cosman who recorded Carson Morris for the government, exposing his lies to them. PSR at p. 21. Further, Mr. Cosman was junior to Mr. Lowery as an officer. The non-custodial sentence that we seek is

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 5

therefore consistent with the sentence already handed down to Lowery, who is similarly situated to Mr. Cosman and pleaded guilty to the same counts. See 18 U.S.C. § 3553(a)(6) (courts are to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct").

      **ii.    The Defendant's Status as a Former Law Enforcement Officer**

Together with Mr. Cosman's good deeds and strong character, addressed below, we respectfully request that the Court consider the additional impact that any term of incarceration will have upon the defendant due to his status as a former corrections officer. Specifically, as courts and correctional facilities have both recognized, the defendant will be "'especially subjected to harassment and physical violence'" due to his prior career. Defreitas v. Lindsay, No. 08 CV 52, 2008 WL 4850195, at *3 (E.D.N.Y. November 6, 2008) (quoting Declaration of Cameron Lindsay, *Warden of MDC Brooklyn*); Valentin v. Murphy, 95 F. Supp.2d 99, 102 (D. Conn. 2000) (lawyers' concern for clients' safety "understandable in light of [their] status as former law enforcement officers"); see also United States v. Rausch, 570 F. Supp.2d 1295, 1309 (D. Colo. 2008) (defendant's former employment with Bureau of Prisons, *inter alia*, "supports ... opinion[]" that he would "be at high risk of being victimized" while incarcerated). This is further heightened in this case as the defendant is not only a former corrections officer – but one who testified against a higher ranking officer. It is possible, therefore, that Mr. Cosman could suffer harassment or worse not only at the hands of other inmates if incarcerated, but corrections officers sympathetic to the plight of the individuals against whom he testified.

Further, if he is incarcerated, prison officials' concern for Mr. Cosman's safety may cause him to be placed in a special housing unit ("SHU") for his own protection, where he could spend up to 23 hours per day locked inside a jail cell with limited access to telephones and other amenities enjoyed by the general population of inmates. See Defreitas, 2008 WL 4850195, at *3; United States v. Zuni, 506 F. Supp.2d 663, 685 (D. N.M. 2007) ("The Court acknowledges that [the defendant's] sentence is very likely to be under look down and that this reality may make his imprisonment more difficult than that of other prisoners"). As such, any period of incarceration is likely to be far more difficult for Mr. Cosman's than other inmates – by way of violence, isolation or both – simply due to his prior career.

      **iii.    The History and Characteristics of the Defendant**

We have attached 30 character letters in support of this submission, reflecting the significant and meaningful role that Mr. Cosman has played in lives of friends, family and co-workers. It would be impossible to include a letter from every individual whom Mr. Cosman has positively influenced and equally daunting to comment on each. Still, the myriad letters on

**JEFFREY LICHTMAN**

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 6

which we remark[1] paint a consistent picture of a dedicated co-worker, a selfless and revered friend, a "good natured human being," (Letter of John Morrissey, attached as Exhibit 2), and a "trustworthy, dependable ... asset to his community." November 11, 2018 Letter of David Dawes, attached as Exhibit 3; see also October 30, 2018 Letter of Kristina Brown, attached as Exhibit 4 ("appreciated and much-loved member of my family as well as respected member of our community"). Sadly, were it not for this sentencing, many of Mr. Cosman's exceptionally good deeds probably would have gone unrecognized.

<u>Admired Family Member and Friend</u>

To begin, many – if not all – of the submitted letters heap praise on Mr. Cosman's dedication to his family and friends. There simply appears to be no limit to his desire to aid them. As David Dawes, the defendant's brother, notes in his letter to the Court:

> As a member of our family, Donny has been there many times to help with urgent situations. We depended on Donny to watch our son, Logan, when our daughter, Lily, was born. It was such a relief to know that Logan would be well taken care of. A year later, Lily fell hitting her face on the coffee table while learning to walk. Her teeth were knocked loose and she needed to go to the hospital. With one call, Donny was right there to take care of Logan while we went to the emergency room with Lily. Our children are now 9 and 6 years old and Donny has played a special part in their lives. He is not only their uncle, but their friend and playmate with whom they share a special bond.
>
> Donny has been there to help our parents during an emergency situation as well. Our mother made an[] urgent call to him the night our father was having a heart attack. Without hesitation, Donny was there to drive my parents to the hospital where my father later required quadruple bypass surgery.

Ltr. of David Dawes, Ex. 3; see also Letter of Marybeth Dawes, attached as Exhibit 5 ("Donny never hesitates to jump in my truck during after a snowstorm to plow everyone's driveways. It takes him hours, but our family is so grateful to him each and every time").

---

[1] Additional letters are collected and attached as Exhibit 29.

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 7

    Mr. Cosman's cousin, Kristina Brown, echoes this praise:

> He was the guy I could count on to listen to my problems and offer valued advice. He was always there for me – his incredible kindness, gentleness and compassion became a scale to which I measured others on. Donny is my cousin by chance – but he is my friend by choice. Donny has always been the first person to offer to help anyone with anything. <u>He has supported me with everything I have done throughout my life</u>. When I started working at the Ulster County SPCA, his only question was, "what can I do to help?" When I held a bake sale to raise money for abused dogs' veterinary bills, he baked cookies [and] then was first in line the next morning to purchase a dozen overpriced brownies.

Ltr. of Kristina Brown, Ex. 4 (emphasis supplied). Further, Michele Brown informs the Court of the defendant's enduring assistance to their elderly family members:

> Donny has two remaining grandmothers who are in their 90's. They are able to live alone in their homes and near us because we have a family network of support for them. Donny plays an important role in the upkeep of their homes, doing yard work and helping out whenever it is needed. He spent hours this hot, muggy summer pulling weeds and trimming trees for my mother. She was very upset because she became unable to do her cherished gardening. Without anyone asking him, he arrived at her door with gardening tools and got to work replanting her favorite garden. <u>When there is any heavy lifting needed with either grandmother, we can always count on him</u>.

November 2, 2018 Letter of Michele Brown, attached as Exhibit 6 (emphasis supplied). Additionally, when Ms. Brown had an accident several years ago wherein she fractured her pelvis and sustained multiple contusions, she was also the beneficiary of Mr. Cosman's good nature: "Before anyone could arrive, Donny showed up and stayed right with me – keeping me calm and reassured until help showed. He made sure my car was taken care of so we didn't have to worry about anything except going to the hospital." Ltr. of Michele Brown, Ex. 6.

    Kimberly Yager recalls for the Court that Mr. Cosman has been there to help her "numerous times, from moving in to a new apartment to helping … get [her] car unstuck in snowstorms." Letter of Kimberly Yager, attached as Exhibit 7; Ltr. of Krystal Alonge, Ex. 8 ("his genuine humanity is always evident. He is one of the very few people about whom I can

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 8

say that I have never seen act poorly or out of character. He is a good friend, as good a role model, and as good a man as anyone would want to know"); see also Letter of William Farrell, attached as Exhibit 9 ("He is a respected community volunteer who's always willing to help his neighbors in any way"). And Vincent Monti observes in his letter that "Donald is the kind of man who is always there when you need him, not only with physical help, but also with moral help." November 19, 2018 Letter of Vincent Monti, attached as Exhibit 10.

### Volunteer Firefighter

Among Mr. Cosman's many positive attributes is his work as a volunteer firefighter in Marlboro, New York, a position that he has maintained since he was 17 years old. PSR at ¶ 82. As the defendant's mother, Marybeth Dawes, explains: "At age 17, he joined our volunteer fire department in Marlboro, NY, where he is an exceptional interior firefighter." Ltr. of Marybeth Dawes, Ex. 5; see also February 14, 2018 Letter of Krystal Alonge, attached as Exhibit 8 ("brother firefighter" who "talk[ed] me through challenging life-saving techniques during firefighter training"); Ltr. of Michele Brown, Ex. 6 ("He has spent countless hours helping at accidents, fighting fires and taking courses learning how to be a better fire fighter and how to help people during their times of trouble")

Of her son's experiences as a firefighter, Ms. Dawes recalls an incident that is oft repeated in the letters concerning an accident that left a vehicle submerged in a pond:

> I will never forget the night that a car careened off of the road, into an incredibly deep pond. Both of my sons were the first fire fighters on the scene and put their own lives on the line to dive into the dark water and pull the gentleman who was trapped in his submerged car to safety. I have never been so terrified and proud as I was that night.

Ltr. of Marybeth Dawes, Ex. 5; see also November 1, 2018 Letter of Peter Carofano, attached as Exhibit 11 ("Donald has been known to risk his own well being to help people .... I can remember when Donald dove into a pond to save a person whose vehicle had gone in and was submerged. The fire apparatuses were on their way, but he felt he had to act immediately"); November 4, 2018 Letter of Erick Masten, attached as Exhibit 12 ("I have witnessed Donald standing on the roof of a submerged car in a pond, after jumping in to search for any trapped occupants"). Friend Jereme DeCarlo adds: "Donald chose to jump in [to the pond] unknowing what he would find ... but ... [he] did what [he] felt was needed." Letter of Jereme DeCarlo, attached as Exhibit 13.

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 9

The defendant's brother, David Dawes, provides more details of Mr. Cosman's dedication as a volunteer firefighter:

> Since 2003, Donny has been a volunteer firefighter for Marlboro Hose Co. No. 1. Donny is a well-liked member of the fire department whose dedication and perseverance has helped in so many ways. He has completed many New York State and Federal level courses and was able to share beneficial information and valuable training with the rest of the firefighters. During fire prevention week in October, Donny played an integral part in teaching young children about fire safety. Dressed in protective turn out gear, Donny has shown kindergartners and first grade students how to stop, drop and roll if their clothes catch on fire. He has also talked to second and fifth grade students about the importance of calling 911 in an emergency. Donny's dedication to his community shows bravery, commitment and responsibility as a volunteer firefighter. <u>He is a conscious member of our community who is willing to help others during any time of need</u>.

Ltr. of David Dawes, Ex. 3 (emphasis supplied); see also Ltr. of Kristina Brown, Ex. 4 ("Donny has been a member of the Town of Marlboro Fire Department for essentially his entire adult life. He puts his life on the line for our community every day – voluntarily and without payment").

Other volunteer firefighters have taken note of Mr. Cosman's dedication to the force. Department Captain Cory Rhynehart notes for the Court his experience with the defendant in this capacity:

> I came into the Marlboro firehouse on my own accord wanting to volunteer for the community. Donny was one of my first contacts after I joined. He went out of his way to make me fell welcomed into the organization. He quickly helped me understand my place within the company and later motivated and supported me to move up to become a ranking officer. Donny is a dedicated member who invests a lot of time and energy to help others around him. He does this as a volunteer and asks for little in return. <u>His only reward is a sense of accomplishment and the comradery among his fellow fireman</u>.

November 7, 2018 Letter of Cory Rhynehart, attached as Exhibit 14 (emphasis supplied). And the former fire chief, Robert Troncillito, adds: "He leads by example at the firehouse through

J<span>EFFREY</span> L<span>ICHTMAN</span>

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 10

training and calls. Don demonstrates his commitment to duty and selflessness, going above and beyond to ensure the safety of others." November 19, 2018 Letter of Robert Troncollito, attached as Exhibit 15; see also Ltr. of Vincent Monti, Ex. 10 ("I have seen Donald run into burning buildings ... and handle numerous other life-threatening situations, not for money, but the desire to help people").

William Aquino, who later would become a fellow corrections officer with Mr. Cosman, writes that before they worked together, there was a "bomb scare on the base at the 105th Airlift Wing in Newburgh, NY." As a fireman, Mr. Cosman "helped evacuate members and co-workers from the headquarters building to safety," and "demonstrated service before self, bravery and the willingness to help others." November 13, 2018 Letter of William Aquino, Jr., attached as Exhibit 16.

Finally, Kerri Monti describes in her letter to the Court the aid that she received from Mr. Cosman when she was training to become a firefighter:

> I joined the department 5 years ago, and was excited to be able to give back to the community, but a bit apprehensive due to the danger of the job. I will never forget my first live burn training, and I was very nervous to go into the burning building to the point I did not want to do the training. The Chief put us into groups of 4, and I was put into a group where Donald was our team leader. <u>It was because of Donald and his leadership skills, along with his confidence and calm demeanor that I was able to get through the training</u>. Knowing Donald was there, reassuring me everything would be ok, was truly the only reason I was able to keep my composure, learn and complete the training successfully.

November 19, 2018 Letter of Kerri Monti, attached as Exhibit 17 (emphasis supplied).

<u>Admired Coworker</u>

Despite his pleading to guilty to crimes that occurred during his career as a corrections officer, his conduct in this case appears to have strayed far from what others experienced, with multiple letters submitted by his former co-workers. See, e.g., November 10, 2018 Letter of Fred Nameth, attached as Exhibit 18; November 8, 2018 Letter of Sal Provenzano, attached as Exhibit 19 ("always ... an asset ... to his fellow officers"); November 14, 2018 Letter of Kevin Mathews, attached as Exhibit 20 ("always been an upright guy at work .... always willing to help me or others when called upon").

JEFFREY LICHTMAN

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 11

    For example, Grant Schafer, a weapons training officer at Downstate Correctional Facility, worked with Mr. Cosman and offered the following of his experiences with the defendant:

> I worked with Donald on many occasions in the facility. Each time we worked together, Donald was very knowledgeable and very helpful in every situation. While attending training four times annually, Donald was always punctual, friendly and engaging. I have always found Donald to be an intelligent young man who could be relied on when needed. The professionalism and knowledge he showed was quite refreshing to see from such a young man, with only a short time on the job. ... Our <u>department needs more young men like Donald</u>.

October 15, 2018 Letter of Grant Shafer, attached as Exhibit 21 (emphasis supplied); <u>see also</u> November 1, 2018 Letter of Terrence Clyburn, attached as Exhibit 23 ("I have never seen him demonstrate anything but professionalism when I worked along side him").

    Another corrections officer, Andrew Murdock, recalls his positive interactions with Mr. Cosman during their time working together at Downstate:

> One instance in particular stands out in my mind. Cosman, another corrections officer ... and I took a medical trip to St. Luke's Hospital located in Newburgh, NY. After the inmate was assessed by the medical staff at the hospital they decided that due to the severity of the inmate's injuries he would have to be flown to Westchester Medical Center located in Valhalla, NY. Once the helicopter arrived at St. Luke's to fly the inmate to the hospital it was discussed amongst the three of us officers who would fly down with the inmate. Officer Cosman was afforded the opportunity to take the helicopter ride with the inmate while [the other officer] and I drove to Westchester Medical Center. I would not have allowed this if I did not trust Cosman. I knew that he would be able to get to the other hospital safely, both the inmate and him. I knew that he would arrange everything amongst the medical staff until my partner and I arrived. <u>I knew he would do a good job since my experiences with him on other trips, not once did he ever disappoint me or let me down.</u>

November 19, 2018 Letter of Andrew Murdock, attached as Exhibit 23 (emphasis supplied); see also Ltr. of Kimberly Yager, Ex. 7 ("As a coworker he was always willing to help [me] and others to complete our daily jobs"); November 19, 2018 Letter of Jeffrey Jackson, attached as Exhibit 24 ("I have always found Donald to be a hard working, forthright, honest person"). And David Skibicki similarly adds: "At work, he was always willing to help others and often concerned with improving conditions." November 6, 2018 Letter of David Skibicki, attached as Exhibit 25.

Another former co-worker, Elizabeth Dorsett, writes that he was "one of the most informative officers with a great disposition," during their time together. November 7, 2018 Letter of Elizabeth Dorsett, attached as Exhibit 26. Ms. Dorsett adds: "He would literally give the shirt off his back and the food out [of] his lunch bag, anything to help out," and despite her longer tenure, "he showed [her] a lot about corrections and how to make it through situations [she] felt [she] could not deal with." Id.; Letter of David Martinez, attached as Exhibit 27 ("I always admired Donny for his composure, willing[ness] to learn and ab[ility] to complete tasks in a professional manner").

Remorse

Finally, many of the submitted letters remark on Mr. Cosman's sincere regret for his criminal conduct – and the PSR notes that his severe depression as a result of this incident nearly caused him to take his own life. PSR at § 72; e.g., Ltr. of Jeffrey Jackson, Ex. 24 ("I know that his incident has weighed very heavily on Donald"). As Mr. Cosman's mother reveals in her letter to the Court: "He has told me many, many times how sorry he is for what happened to the inmate. Most of all, he is devastated that he did not do the right thing. ... I know how disappointed he is in himself." Ltr. of Marybeth Dawes, Ex. 5 (emphasis supplied); see also Ltr. of David Dawes, Ex. 3 ("He has taken responsibility for his actions and has shown great remorse for what he has done").

Similarly, Kristina Brown has witnessed the defendant's "absolute remorse and tremendous guilt," for his criminal conduct. Ltr. of Kristina Brown, Ex. 4; see also Ltr. of Michele Brown, Ex. 6 ("Donny has expressed nothing buy shame and regret over this"). And former co-worker Gareth Walker adds that Mr. Cosman "tearfully accepted responsibility for his actions" to him one day before he resigned from the Department of Corrections. October 30, 2018 Letter of Gareth Walker, attached as Exhibit 28; Ltr. of David Martinez, Ex. 27 ("he knows what he did was wrong").

The defendant's closest friend, Jereme DeCarlo, who has been present for Mr. Cosman at every court appearance, and brought him to every meeting with investigators and attorneys perhaps best has observed his regret for his actions, noting in his letter: "I've had to be a voice of reason ... and a shoulder for him to cry on throughout this entire process. Donald is fully aware

**JEFFREY LICHTMAN**

Hon. Kenneth M. Karas
United States District Judge
February 26, 2019
Page 13

of how his actions have violated the rights of the victim and broken the laws ... Throughout this time, I have personally witnessed his remorse ...." Ltr. of Jereme DeCarlo, Ex. 13.

### E. CONCLUSION

Defendant Donald Cosman comes before this Court asking for mercy. A life filled with extraordinary good deeds and hard work has been marred by his criminal actions. Nevertheless, as the powerful enclosed letters reveal, Mr. Cosman is an uncommonly decent and giving man, and unlike many defendants, has made very sincere efforts to help family, friends and even strangers in any way possible throughout his life. He is the rare defendant who has given so much to his community, friends and family – when no one was watching, when he had no need to impress a judge deciding his fate. For these reasons and the others stated herein, a probationary sentence is respectfully requested.

Respectfully submitted,

Jeffrey Lichtman

Encs.

cc: Pierre Armand, Esq.
    Andrew Dember, Esq.
    Assistant United States Attorneys (by ECF & FedEx)